pear from the evidence that he abused the authority which gave him permission to enter the premises of the plaintiff, and I think it was incumbent upon the plaintiff to show that such authority was abused before he can charge the defendant with trespass. I do not think the act of the defendant is one that comes within the rule of taking property from the owner without just compensation. A survey and other preliminary steps are not such a taking. As is said in Dill. Mun. Corp. (4th Ed.) § 614: "Preliminary surveys may be authorized by the legislature without making compensation therefor, and they, when so authorized, are not trespasses." Bloodgood v. Railroad Co., 14 Wend. 51. In this case, although reversed in 18 Wend. 9 (also reported in 31 Am. Dec. 313), the chancellor said (page 17, 18 Wend., and page 319, 31 Am. Dec.): "I do not mean to be understood that the legislature may not authorize a mere entry upon the land of another for the purpose of examination or of making preliminary surveys, etc., which would otherwise be a technical trespass, but no real injury to the owner of the land, although no previous provision was made by law to compensate the individual for his property, if it should afterwards be taken for the public use." I do not think the case of Sahr v. Scholle, 89 Hun, 42, 35 N. Y. Supp. 97, cited by the plaintiff's attorney, comes within the rule. That was a case where personal property was actually taken by an agent of a corporation under a private statute. Under such circumstances, the taking of property must be justified, and the burden of proof is upon the party so taking to plead the statute and justify his act. The rule, however, is different under a public statute, as before stated. I am of the opinion that no trespass was committed by the defendant, and he is, therefore, entitled to judgment. Let judgment be entered accordingly.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

Clarence Edwards, in pro. per.

John Whalen, Corp. Counsel (James T. Malone and Samuel K. Probaco, on the brief), for respondent.

PER CURIAM. Judgment of the municipal court affirmed, with costs, on the opinion of Justice RASQUIN.

<hr>

(63 App. Div. 454.)

MALONEY v. IROQUOIS BREWING CO. et al.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

1. CONTRACT—INSTRUCTION—LIABILITY OF THIRD PARTY.

A tripartite agreement was entered into for the sale of a saloon between the owner, the purchaser, and a brewing company, by which the brewing company agreed that, in consideration of the purchaser paying it an additional $2 per barrel for beer, it would "receive said money, and when the sum of $1,200 had been received, as provided," it would pay the seller the sum of $3,000, which was the purchase price of the saloon. Held, that the words "receive" and "received," as used in the contract, could not be construed as synonymous with "collect" or "collected," and that, the purchaser having made default in his payments before they had amounted to the sum of $1,200, the seller could not recover the entire amount of the purchase price from the brewing company.

2. SAME—CHATTEL MORTGAGE.

Where a brewing company agreed to pay the seller of a saloon the amount of the purchase price on its receiving from the buyer an amount less than the purchase price in increased payments for beer purchased from the brewing company by the vendee, and took a chattel mortgage on the saloon property to secure the performance of the vendee's contract, the fact that the chattel mortgage contained the usual stipulation authorizing the brewing company to take possession of the mortgaged property in the event of a default by the purchaser did not impose on such brew-

ing company any obligation to collect from the purchaser such additional payments, in order that it might pay the same to the seller of the saloon.

3. SAME—PRACTICAL CONSTRUCTION OF CONTRACT.

Where a brewing company contracted to receive an additional $2 per barrel for beer purchased by the purchaser of a saloon, and agreed that when the sum of such increased price amounted to $1,200 it would pay the seller the purchase price of the saloon, the fact that the brewing company thereafter made advances to the seller during the time the purchaser was making his additional payments, which exceeded the amount of the additional payments which it had received from the purchaser, did not operate to place a different or practical construction on the contract, rendering the brewing company absolutely liable for the full amount, though it had not received the $1,200 from the vendee, since it is only in case where the language of a contract is indefinite and ambiguous that a practical construction is allowed.

4. CHATTEL MORTGAGES—RENEWAL—CERTIFICATE—AMOUNT DUE — DENIAL—ESTOPPEL.

A chattel mortgagee is not estopped to deny that a certificate of renewal of the mortgage filed by one of its officers was erroneous in its statement of the amount due, where it appeared that the error was due to a mistake, and that no one had been misled thereby to his prejudice.

·Rumsey, J., dissenting.

Appeal from judgment on report of referee.

Action by Thomas F. Maloney against the Iroquois Brewing Company and another. From a judgment in favor of defendant company, entered on a referee's report, plaintiff appeals. Affirmed.

The following is the opinion of Lyman M. Baker, referee:

The agreement upon which this action is founded is tripartite, and consists of three distinct undertakings necessary to be considered here: (1) The agreement on the part of the plaintiff to sell the good will of the business and the furniture connected with it to Mallon. (2) The agreement of Mallon to pay the Iroquois Brewing Company the sum of $2 per barrel for each barrel of beer purchased by him of it in addition to the regular price, until he should have paid the defendant company the sum of $1,200. The execution by Mallon to defendant company of a chattel mortgage upon the personal property purchased by him of plaintiff, to secure the performance of his (Mallon's) part of the contract, and, as further security to the same end, the assignment by Mallon to the defendant company of the lease of the premises in which the business was conducted, and the procurement by Mallon of the consent of the landlord to such assignment. (3) The agreement on the part of the defendant company that it would "receive said money, and when the sum of $1,200 shall have been received, as provided," it would pay plaintiff the sum of $3,000. In the consideration of this contract we must not lose sight of the fundamental principle that "every party to such a contract is bound only to the extent of the promises made by him, and any party thereto may insist upon the performance of every promise made to him or for his benefit by the party or parties who made it." Berry Harvester Co. v. Walter A. Wood Mowing & Reaping Mach. Co., 152 N. Y. 540, 547, 46 N. E. 952. Tested by this rule, what is the extent of the promise made by defendant company to plaintiff? That when it should have received from Mallon the chattel mortgage and assignment of the lease, with the assent of the landlord, and $1,200, to be constituted by the sums of $2 paid by him to the company in addition to the regular price upon each barrel of beer purchased by Mallon of it, then it should pay plaintiff the sum of $3,000. That the $1,200 so to be received was to be composed of this extra $2 cannot well admit of doubt, nor is it open to question here that the payment of the $3,000 to plaintiff by the defendant company was dependent upon the sum of $1,200 having been so received by it, and was not to be paid until then. The distinct allegation is made in the complaint "that, in consideration of the said defendant Mallon's agreeing to purchase and use exclusively upon said premises the product

and beer of the defendant Iroquois Brewing Company under said agreement, for which the said defendant Mallon agreed to pay to the said brewing company the sum of two dollars ($2.00) per barrel over and above the regular price of said beer per barrel, which said sums of two dollars should be received by the said brewing company, said brewing company did agree that when the sum of twelve hundred dollars ($1,200) should be so received the said defendant Iroquois Brewing Company should pay over to the plaintiff the full sum of three thousand dollars ($3,000), agreed to be paid as the purchase price for said business and fixtures by the defendants"; and that is the position of the defendant company. The plaintiff now contends that the words "receive" and "received," as used in the contract, should be construed as synonymous with "collect" and "collected," and his argument and the cases cited in his behalf have received careful consideration. In each of these cases want of mutuality had been interposed to defeat the contract in suit, the contract having been silent as to any obligation on the part of the party invoking it as a defense; and the courts say that the word "agrees" implies a mutuality under circumstances where without it the intention of the parties would be defeated. Baldwin v. Humphrey, 44 N. Y. 609; Butler v. Thomson, 92 U. S. 412, 23 L. Ed. 684; Jugla v. Trouttet, 120 N. Y. 21, 27, 23 N. E. 1066. But in this case there is no office for implication; the contract specifies precisely what the defendant company was to do, and when it should be done. There is neither doubt nor ambiguity about that feature of it. It was simply to receive the $2 per barrel additional, and, when that should reach the amount of $1,200, and the defendant was in possession of the security it was entitled to from Mallon, it was to pay plaintiff $3,000; and, if we are to interpolate in the contract the words "collect" and "collected" in lieu of "receive" and "received," we are making an entirely different agreement from the one in hand, and one not in conformity with the intention of the parties to it, so far as any light has been thrown upon the subject by the pleadings or proofs. It must be borne in mind that this contract was drawn by a lawyer, the counsel for Mallon, under the supervision of another lawyer, the counsel for plaintiff, defendant company having no legal representation in the matter; and it is difficult to see how plaintiff and his counsel could have allowed the word "receive" to be used instead of "collect," had that not been the intention. There is not the slightest evidence, nor is it charged in the complaint, that the contract as drawn is not as originally intended, nor that the words "receive" and "received" were not used advisedly and understandingly, or that the defendant company intended to, or that plaintiff expected it would, do otherwise than it has undertaken in the proffered contract in plain words to do; and to put a construction upon the words under discussion, as the referee is invited by the plaintiff to do, is to construe it directly contrary to its manifest sense.

There is another important circumstance to be given weight in the consideration of this feature of the controversy: When Mallon and plaintiff were negotiating with the defendant company in relation to the purchase, as plaintiff testifies, "Mr. Mallon told him [Niederpruem] what he wanted; that I was going to get out, and had promised him the place for some time, and he wanted it, but, of course, not having any money, he wanted the brewery to advance the money; and he thought a little while, and he says, 'You haven't got any money at all?' and Mallon says, 'No.'" After this notice of the impecuniosity of Mallon, it is quite easily comprehended why the word "receive" was used as the measure of the defendant company's obligation, and why it did not undertake to become insurer to plaintiff of the absolute payment by Mallon to it of the two dollars additional per barrel. It certainly was competent for defendant company to limit its duty to plaintiff by deferring payment to him of the whole consideration of the purchase until such time as it should receive the $1,200 as provided in the contract, and as well all the security contemplated by the contract to be given, and not to assume the responsibility of enforcing the collection of the amount from a person who, to his knowledge, had nothing, and, not only that, but who had an unsatisfied judgment against him at the time. The position taken by plaintiff that, inasmuch as the chattel mortgage taken by the company from Mallon contained a stipulation that, "if default be made in such payment, or if the said party of the second part shall at any time deem itself in danger of losing

said debt, or any part thereof, by delaying the collection thereof, * * *
the said party of the second part is hereby authorized to take possession,"
etc., it must be assumed that the word "receive" was used as synonymous
with "collect," seems untenable. It is a phrase or stipulation contained in
nearly every chattel mortgage executed in this state. If the interpretation
of the contract as here made is the correct one, there would be no doubt
that the company would be interested in collecting until it should have paid
the full purchase price to plaintiff, and then only to the extent of what it
might have paid plaintiff in excess of the additional payments made to it
by Mallon. Its insertion in the chattel mortgage was as much for the benefit
of plaintiff as for that of the brewing company. While it conferred a privi-
lege upon the company in that regard, there was nothing obligatory upon
the company to take advantage of it. There is nothing unreasonable about
this interpretation of the agreement. To paraphrase the language of Judge
Martin in Gillet v. Bank, 160 N. Y. 549, 55 N. E. 292: "If there is any un-
certainty or ambiguity as to the meaning of the agreement, it should be re-
solved in favor of the defendant company, as it was plaintiff's attorney who
assisted in its preparation; and, if there is any doubt as to the meaning of
the terms employed, the plaintiff is responsible for it, as the language is
wholly his own." That is, the choice of words was in his power, and it can-
not well be doubted that the one selected was expressive of just what he and
his attorney understood to be the agreement, in so far as it related to the obli-
gation assumed by the brewing company. Nor is the plaintiff, by such inter-
pretation, placed at the mercy of either party defendant. Mallon's promise
to pay the additional two dollars per barrel clearly inured to the benefit
of plaintiff (Berry Harvester Co. v. Walter A. Wood Mowing & Reaping Mach.
Co., supra), and plaintiff could insist upon its performance by him. He
had his remedy at law for its breach, or he could come into a court of equity,
as he has done, and ask, under equitable conditions, for an assignment of the
chattel mortgage, or an enforcement of it. He has never been, since Mallon's
default, remediless.

Plaintiff urges that the defendant company has by its various payments
of money to and on behalf of plaintiff placed a construction upon the contract
at variance with the views here expressed, in that it has paid or advanced
to plaintiff, and at his request, large sums of money in excess of the amount
it has received from Mallon as additional payments; but that fact, it would
seem, is of no moment here in that regard, as it is only in cases where the
language of a contract is indefinite or ambiguous that the acts of the parties
in carrying it out are received as a practical construction of it. Hill v.
Priestly, 52 N. Y. 635. These advances to plaintiff obviously were made dur-
ing a period of time when Mallon was making his additional payments to the
brewing company, and when it was undoubtedly expected that Mallon would
fulfill his contract. Plaintiff's necessities were well known to the officers of
the company, who generously sought to relieve them, and it is not apparent
why these favors should be tortured into a recognition of liability on the part
of the benefactor to plaintiff to the extent of the entire purchase price.

It is difficult to see why defendant company is estopped to deny that the
certificate of renewal of the first chattel mortgage, filed by its treasurer, was
erroneous in its statement of the amount due. The amount stated as then
due was clearly and palpably a mistake. No one was misled to his prejudice,
or injured by it, or acted upon it, or was placed in any position by the act
that would now render it unjust, unfair, or inequitable to assert the truth,
the presence of which is of the very essence of the principle of equitable
estoppel. Mallon, being the debtor, certainly could take no advantage of the
error, and the rights of neither purchaser nor incumbrancer had intervened;
and nothing whatever had occurred in the interval between the filing of the
certificate and the new chattel mortgage that has in any possible way been
injurious or prejudicial to any one concerned. The new chattel mortgage did
not, it is conceded, state the true amount of the indebtedness to secure the
payment of which it was given, as it then existed; but that can work injury
to none of the parties to this controversy. To the extent of the real indebted-
ness it can be enforced, and that is as far as plaintiff and the company are
interested. To no larger amount can it be enforced, and that is as far as
Mallon is interested. When it was ascertained that Mallon was making de-

fault in his payments of the additional amounts of beer purchased, the brewing company did all it was called upon to do legally or morally, it would seem. It offered to assign to plaintiff the chattel mortgage it held, but plaintiff declined to accept it. It had already paid plaintiff all that it had received in the way of additional payments. It could not assign to him the lease of the premises, because it could not get the assignment from Mallon. The chattel mortgage was admittedly insufficient security for the amount involved. Plaintiff declined to accept it for that expressed reason, and it was so regarded by the company. It is, therefore, not apparent upon what principle, legal or equitable, the defendant company can be held liable for the payment of the balance of the purchase price, when it has neither received the prerequisite amount from Mallon, nor an essential part of the security agreed to be given it by Mallon as a part of the consideration inducing it to enter into the tripartite agreement. The defendant company has advanced plaintiff a large amount of money above what he was entitled to receive from it, and should recover the excess in the manner indicated in the report.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Simon Fleischmann and Harry L. Taylor, for appellant.
Robert F. Schelling, for respondents.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Lyman N. Baker, referee.

RUMSEY, J., dissents.

---

(35 Misc. Rep. 513.)

VILLAGE OF MECHANICVILLE v. STILLWATER & M. ST. RY. CO.

(Supreme Court, Special Term, St. Lawrence County. July, 1901.)

1. STREET RAILROADS—FRANCHISES—STREETS—PAVING—COMPANY'S LIABILITY.
A street railroad company's franchise granted in 1882 and renewed in 1894 required the company to pave the street between the rails and for 20 inches outside of them on both sides of the track with "small stone," and "that the same should at all times be kept in good condition." In 1889 the village required the corporation to pave such space with brick, and, the company refusing to do so, the village did the work at its own expense. *Held*, that the village was entitled to recover such expenses from the railroad company, since the village was entitled to exact what it deemed a suitable pavement in 1899, and was not limited to a pavement composed of "small stone."

2. SAME—MUNICIPAL CORPORATION—FRANCHISES—POWERS.
A franchise granted by village trustees to a railroad company, requiring the company only to pave the streets occupied by it with "small stone," is no defense to an action by the village to recover the cost of paving such streets with brick, after the company had refused to do so, since the trustees were persons of limited powers, and could not give up the streets to private corporations, nor surrender the rights of the public to have the streets kept in proper condition for use.

3. SAME—CORPORATE FRANCHISE—STATUTES—CONSTITUTIONAL LAW—OBLIGATION OF CONTRACT.
That a street railroad company by its franchise was required only to pave the part of the street which it occupied with "small stone" did not render Laws 1892, c. 676, § 98, requiring a street surface railway corporation to keep its street way in repair as and when directed by the local authorities, unconstitutional as to such street railway, as impairing the obligation of the railway's contract with the village as evidenced by its charter.